## No. 12-55726

## United States Court of Appeals for the Ninth Circuit

——————

**Chula Vista Citizens for Jobs and Fair Competition**, **Lori Kneebone**, **Larry Breitfelder**, and **Associated Builders and Contractors of San Diego, Inc.**,
*Plaintiffs-Appellants*,

*v.*

**Donna Norris**, in her official capacity as City Clerk of Chula Vista, **Mayor Cheryl Cox**, in her official capacity as Mayor and Member of the Chula Vista City Council, and **Pamela Bensoussan**, **Steve Castaneda**, **John McCann**, and **Rudy Ramirez**, in their official capacities as Members of the Chula Vista City Council, *Appellees*, *and* **State of California**, *Intervenor-Appellee*.

——————

Appeal from the United States District Court for the
Southern District of California, No. 3:09-cv-00897-BEN-JMA

——————

# Brief of Appellants

——————

Charles H. Bell, Jr.
  cbell@bmhlaw.com
Brian T. Hildreth
  bhildreth@bmhlaw.com
BELL, MCANDREWS & HILTACHK, LLP
455 Capitol Mall, Suite 600
Sacramento, CA 95814
916/442-7757; 916/442-7759 (fax)

Gary D. Leasure
  gleasure@workmanleasure.com
WORKMAN LEASURE, LLP
12626 High Bluff Drive # 150
San Diego, CA 92130
858/720-1992; 858/720-1990 (fax)
*Counsel for Plaintiffs-Appellants*

James Bopp, Jr.
  jboppjr@aol.com
  *Lead Counsel for Plaintiffs-Appellants*
Richard E. Coleson
  rcoleson@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434; 812/235-3685 (fax)
*Counsel for Plaintiffs-Appellants*

## Corporate Disclosure Statement

Plaintiffs-Appellants Lori Kneebone and Larry Breitfelder are individuals, and Plaintiff-Appellant Chula Vista Citizens for Jobs and Fair Competition is an unincorporated association. Plaintiff-Appellant Associated Builders and Contractors of San Diego, Inc., is a corporation, but it has no parent corporation and no stock, so no publicly held corporation owns 10% or more of its stock. Fed. R. App. P. ("FRAP") 26.1.

# Oral Argument Request

Plaintiffs-Appellants request oral argument because core political activity is involved, the issues are somewhat complex, and there will be significant value in counsel being able to respond to questions from the Court and clarify facts and arguments as needed. FRAP 34(a)(1).

# Table of Contents

Corporate Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Oral Argument Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues, Reviewability & Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . 1

Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   I.   The Natural-Person Requirement Is Unconstitutional. . . . . . . . . . . . . . 6

      A.  The City's Requirement Is Not Mandated by Any Provision, and
Cities in Similar Situations Do Not Require It, Undercutting Any
Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.  Associations' Right to Be Proponents Is Fully Protected by First
Amendment Rights to Speech, Association, and Petition Under
Strict Scrutiny. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.  The Natural-Person Requirement Is Unconstitutional. . . . . . . . . . . . 21

           1.  The Requirement Impermissibly Bans Political Speech. . . . . . . . 22

           2.  The Requirement Impermissibly Bans Disfavored Speakers'
Speech. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3. The Requirement Impermissibly Requires Speech-By-Proxy.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4. The Requirement Creates an Unconstitutional Condition.. . . . . . 29

5. The Requirement Fails Strict Scrutiny.. . . . . . . . . . . . . . . . . . . . . 32

II. The Requirement that Proponents Disclose Their Identity on the Circulated Version of the Initiative Petition Is Unconstitutional... . . . . . . . . . 34

    A. The Reveal-Yourself Requirement Impermissibly Bans Anonymous Petition Circulation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        1. The First Amendment Protects Anonymous Petition-Circulation Speech.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        2. The Reveal-Yourself Requirement Burdens and Chills Speech.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        3. The Requirement Is Subject to, and Fails, Strict Scrutiny.. . . . . . 42

        4. If Exacting Scrutiny Were Proper, the Requirement Fails.. . . . . . 48

    B. The Reveal Yourself Requirement Is an Impermissible Content-Based Regulation of Political Speech.. . . . . . . . . . . . . . . . . . . . . . . . 55

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Certificate of Compliance

Certificate of Service

# Table of Authorities

*Cases*

*ACLU v. Heller*, 379 F.3d 979 (9th Cir. 2004). . . . . . . 35-37, 40, 44, 48, 51, 56, 57

*Alliance for a Better Downtown Millbrae v. Wade*, 108 Cal. App. 4th 123 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*American Tradition Partnership v. Bullock*, 132 S.Ct. 2490 (2012). . . . . . . . . . 27

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . 14, 15, 20

*Bank of Cal. v. Opie*, 633 F.2d 977 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . 2

*Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . 30

*Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999). . . . 33-40, 42, 44, 48, 50, 51, 56

*Buckley v. Valeo*, 424 U.S. 1 (1976). . . . . . . . . . . . 19, 25, 29, 37, 44-46, 49, 51, 53

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir.2003). . . . . . . . . 47

*Campaign for Family Farms v. Glickman*, 200 F.3d 1180 (8th Cir. 2000). . . . . . 54

*Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 47

*Citizens Against Rent Control v. Berkeley*, 454 U.S. 290 (1981). . . . . . . . . . 36, 45

*Citizens for Responsible Behavior v. Superior Court*, 1 Cal. App.4th 1013 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Citizens United v. FEC*, 130 S.Ct. 876 (2010). . . . 21-24, 26-28, 32, 33, 36, 37, 42, 44, 46

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Coalition for Fair Rent v. Abdelnour*, 107 Cal. App. 3d 97 (1980). . . . . . . . . . . 11

*Doe v. Reed*, 130 S.Ct. 2811 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 37, 46

*Dolan v. City of Tigard*, 512 U.S. 374 (1994). . . . . . . . . . . . . . . . . . . . . . . . 31

*FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986). . . . . . . . . . . . 28, 46

*FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007). . . . . . . . . . . . . . . 19, 32, 44

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978).. . . . . . . . 23, 25, 29, 33

*Glendale Tenants Ass'n v. City of Glendale* 2005 WL 419409 (Cal. App. 2 Dist.) (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Grant v. Meyer*, 741 F.2d 1210 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . 17

*Grant v. Meyer*, 828 F.2d 1446 (10th Cir. 1987) (en banc). . . . . . . . . . . . 14, 15, 20

*Human Life of Wash. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010). . . . . . . . . . 2, 49

*Lefkowitz v. Cunningham*, 431 U.S. 801 (1977).. . . . . . . . . . . . . . . . . . . . . . 30, 31

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995). . 35-37, 40, 48, 51, 55-57

*Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789 (1984).. . . . . . 53

*Meyer v. Grant*, 486 U.S. 414 (1988). . . . . 14-18, 20-22, 28, 34, 35, 40, 43, 50, 51

*MHC Financing Ltd. Partnership v. City of Santee*, 125 Cal. App. 4th 1372 (2005)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*NAACP v. Alabama*, 357 U.S. 449 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Pest Committee v. Miller*, 626 F.3d 1097 (9th Cir. 2010). . . . . . . . . . . . . . . . . 43

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006). . . . . . . . . . . . . . 22, 42, 44, 56, 57

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). . . . . . . . . 16, 46, 48

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984). . . . . . . . . . . . . . . . . . . . 19

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Sampson v. Buescher*, 625 F.3d 1247 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . 45

*Save Stanislaus Area Farm Economy v. Board of Supervisors of the County of Stanislaus*, 13 Cal. App. 4th 141 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simmons v. United States*, 390 U.S. 377 (1968). . . . . . . . . . . . . . . . . . . . . . 29-32

*Simon & Schuster v. New York State Crime Victims Bd.*, 502 U.S. 105 (1991). . . 46

*Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622 (1994). . . . . . . . . . . . . . . . . . . . 53

*U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*U.S. v. Midgett*, 342 F.3d 321 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 32

*U.S. v. Oakland*, 958 F.2d 300 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. Scott*, 450 F.3d 863 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

*Washington Initiatives Now v. Rippie*, 213 F.3d 1132 (9th Cir. 2000). . 35-37, 39, 40, 42, 44, 46, 49, 50

**Constitutions, Statutes & Regulations**

28 U.S.C. 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. 1343(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. 2202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Const. art. II, § 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Election Code § 342.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 7-10

Cal. Elections Code § 321. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Elections Code § 9202(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 34, 48, 50

Cal. Elections Code § 9205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 34, 47, 48, 50

Cal. Elections Code § 9207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 34, 38, 45, 48

Cal. Gov. Code § 6252(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Gov. Code § 82047. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Charter of Glendale, Art. XVIII, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Charter of Santa Barbara, § 1303. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

City of Chula Vista Charter § 903.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 7-9

Fed. R. App. P. 26.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. App. P. 34(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Fed. R. App. P. 4(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 54(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S. Const. amend. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

***Other Authorities***

2009 Cal. Legis. Serv. Ch. 373 (A.B. 753) (West). . . . . . . . . . . . . . . . . . . . . . . . . . 9

Santa Barbara, City Council Minutes (July 11, 2006). . . . . . . . . . . . . . . . . . . . . . 11

# Jurisdiction

The district court had jurisdiction over this civil action arising under 42 U.S.C. 1983 and the First and Fourteenth Amendments of the United States Constitution and challenging laws and enforcement policies established and maintained under color of law by the City of Chula Vista ("**City**") and the State of California ("**State**"). 28 U.S.C. 1331 and 1343(a)(3). The challenged provisions and complaint established an "actual controversy" under 28 U.S.C. 2201, allowing declaratory judgment and supplemental relief (28 U.S.C. 2202). This Court has jurisdiction of the appeal of the Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment ("**Order**") (Excerpts of Record ("**ER–**") 2) and the final Judgment in a Civil Case (ER–1), which resolved all issues. Fed.R.Civ.P. 54(b); 28 U.S.C. 1291. The Order was filed March 22, 2012; Judgment was filed April 10, 2012. Notice of Appeal was timely filed on April 20, 2012 (ER–28). FRAP 4(a)(1)(A).

## Issues, Reviewability & Standard of Review

At issue is the federal constitutionality of certain City and State requirements regarding ballot initiatives—involving Sections 342, 9202(a), 9205, and 9207 of the California Elections Code ("**Code**"); Section 903 of the City of Chula Vista Charter ("**Charter**") (incorporating Code provisions); and the City's enforcement

policy regarding these provisions. As interpreted by the City and State, these provisions require that an initiative proponent be an individual elector,[1] thereby banning associations (including associations of, or containing, electors) from undertaking their own initiative petitions. The provisions also are enforced as requiring that proponents of initiative petitions publically disclose their identity at the point of contact with the voters. The issues on appeal are below.

The standard of review on each issue is de novo because they involve the constitutionality of laws (and enforcement polices based thereon) and were decided on summary judgment. *See Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); *Bank of Cal. v. Opie*, 633 F.2d 977, 979 (9th Cir. 1981).

1. Whether the City's enforcement policy (based on Charter § 903 and incorporated Code provisions, especially Code § 342) and the State's requirement (under Code § 342) that a "proponent" of an initiative petition be an individual elector (**"Natural-Person Requirement"**), i.e., not an association (incorporated or not), is unconstitutional under the First Amendment of the U.S. Constitution, both as applied to Appellants (collectively **"Plaintiffs"**) and facially. *See* Code §§ 342 ("proponent" definition), 9202(a), 9205, and 9207; Charter § 903 (incorporating Code provisions). (This issue was raised as Count 2, ER–60, 72-75 (Verified Complaint

---

[1] "'Elector' means any person who is a United States Citizen 18 years of age or older and resident of an election precinct at least 15 days prior to an election." Code § 321.

("**VC–**") ¶¶ 123, 174-84), and ER–32-33,[2] and decided at ER–4-12.)

2. Whether the requirement that the identity of an initiative proponent be disclosed at the point of actual petition circulation among the voters for requisite signatures ("**Reveal-Yourself Requirement**") is unconstitutional under the First Amendment, both as applied to Plaintiffs and facially. *See* Code § 9207; Charter § 903 (incorporating Code provisions). (This issue was raised as Count 1, ER–66-72 (VC–¶¶ 157-73), and decided at ER–12-25.)

## Case

This case arose as a result of efforts by Plaintiffs to qualify and pass a City initiative. On April 28, 2009, Plaintiffs filed their verified Complaint for Declaratory and Injunctive Relief (ER–111 (Dkt. 1)), challenging certain State and City provisions, as enforced by the City, as violating Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution. On June 4, Plaintiffs moved for a preliminary injunction. ER–1112 (Dkt. 7). On August 12, the State was allowed to intervene on the basis that the constitutionality of State statutes was at

---

[2] This citation is to pages from Plaintiffs' Court-Ordered Supplemental Brief (Dkt. 37 at 2-3), wherein Plaintiffs noted that they had originally challenged the *City's* Natural-Person Requirement alone, because they did not believe that the *State's* Code provisions mandated such a requirement, but that if it did then the State's Requirement was also unconstitutional. Plaintiffs reasserted this claim against the State's Requirement in its summary judgment memorandum. ER–31 (Dkt. 54-1 at 2 n.3).

issue. ER–114 (Dkt. 30). On August 20, the district court ordered supplemental briefing on whether Code § 342's use of "person or persons" to define "proponents" and Code § 9202's use of "proponent" are limited to natural persons. ER–114 (Dkt. 35). Effective January 1, 2010, California's legislature revised Code § 342 to permit only "electors" as state-wide initiative proponents but allowing "persons" still to be proponents in other initiatives. A–2 (texts). On March 8, the court denied as moot the preliminary-injunction motion and stayed the case pending decision in *Doe v. Reed*, 130 S.Ct. 2811 (2010) (decided June 24). ER–114 (Dkt. 42).[3] On March 22, 2012, the court issued its summary-judgment Order granting summary judgment to Defendants-Appellees and denying it to Plaintiffs. ER–2 (Dkt. 70). On April 10, Judgment was entered. ER–1 (Dkt. 71). On April 20, Plaintiffs filed their Notice of Appeal. ER–28 (Dkt. 75).

## Facts

As stated by the district court, ER–3, the basic facts are simple.[4] The Plaintiffs are Chula Vista Citizens for Jobs and Fair Competition ("**Chula Vista Citizens**"),[5]

---

[3] After filing suit, Plaintiffs got an initiative passed on June 8, 2010. ER–3. This case is capable of repetition yet evading review, so not moot. ER–3 n.1.

[4] More facts are in the Verified Complaint. ER–40.

[5] Chula Vista Citizens "is an unincorporated association and a ballot measure committee formed to pass the Fair and Open Competition Initiative in Chula Vista ("**the Initiative**")," ER–43 (VC–¶ 19), which passed as Proposition G.

Associated Builders & Contractors, Inc. ("**ABC**"),[6] and individuals Lori Kneebone and Larry Breitfelder, residents and registered voters of the City (i.e., electors) and members of Chula Vista Citizens. ER–3, 44, 59. Defendants are City officials and the State, which intervened to defend the constitutionality of State laws. ER–3. "Chula Vista Citizens and [ABC] attempted to propose an initiative to be placed on the ballot in the City . . . , but it was rejected by the City Clerk." ER–3. Kneebone and Breitfelder then proposed an initiative that was accepted and passed as Proposition G. ER–3. Further facts are mentioned as pertinent below.

## Argument Summary

The City and State require that initiative proponents be individual electors ("Natural-Person Requirement"), not associations (incorporated or not), including associations of, or including, electors. Plaintiffs wanted to initiate, promote, qualify, and enact an initiative in Chula Vista favorable to an issue they advocate. They wanted the associational plaintiffs (Chula Vista Citizens and ABC) to be the initiative proponents, but were forbidden to do so by the Natural-Person Requirement. So two members of Chula Vista Citizens, Kneebone and Breitfelder, who were City electors agreed to be proponents. Plaintiffs challenge the Natural-Person Requirement as violating their First Amendment rights to free speech, association,

---

[6] ABC was the largest single donor to Chula Vista Citizens and principal financial sponsor of the Initiative. ER–53 (VC–¶ 76).

and petition. Initiative proponents have been held by the U.S. Supreme Court to be engaged in core political activity so that their activities are entitled to strict scrutiny. Thus, being a proponent is no mere ministerial, legislative act subject to deferential, rational-basis review. Under proper, high-level review, this Requirement is unconstitutional because it impermissibly bans political speech, impermissibly bans disfavored speakers' speech, requires speech-by-proxy, creates an unconstitutional condition, and fails strict scrutiny.

Plaintiffs also challenge the Reveal-Yourself Requirement, i.e., the requirement that initiative proponents reveal themselves on the petitions circulated for signatures, under the First Amendment because this Requirement (A) prohibits anonymous petition-circulation speech to the voters and (B) is an impermissible, content-based speech proscription.

## Argument

### I. The Natural-Person Requirement Is Unconstitutional.

Chula Vista Citizens and ABC wanted, and want, to be initiative proponents. ER–44, 46, 54-55, 60 (VC–¶¶ 22-24, 37, 78-79, 88, 123). Because they could not do so for the Initiative in progress during this litigation—due to the Natural-Person Requirement—they asked Kneebone and Breitfelder (members of Chula Vista Citizens and residents and registered voters in Chula Vista, i.e., electors) to be proponents for the Initiative. ER–46, 48, 50 (VC–¶¶ 37, 44, 59).

6

At issue is whether the Requirement that initiative proponents be individual electors violates the First Amendment, as applied to associations such as Chula Vista Citizens and ABC and facially. The City's Requirement is based on its interpretation of Charter § 903 and Code provisions incorporated therein (especially Code § 342). The State's Requirement is based on Code § 342, amended after litigation began to require that proponents for *statewide* initiatives be "electors," though previously it had required only that they be "persons" (and proponents in *non*-statewide initiatives still must be "persons"). *See infra* at 8-9.

Regarding scrutiny, the district court says that acting as a proponent "is a legislative act," "not pure speech" and, if it "is speech to some degree," "[i]t is . . . closer to the mechanics of the ballot initiative process." ER–11. So the court allows deferential "leeway" and upholds the Requirement as "a rational, reasonable, and necessary measure to protect Chula Vista's form of self-government." ER–11. But persuading electors to sign petitions in sufficient numbers to propose an initiative on the ballot and then to enact it is core political speech, association, and petition, fully protected by the First Amendment under strict scrutiny. *See infra*.

## A. The City's Requirement Is Not Mandated by Any Provision, and Cities in Similar Situations Do Not Require It, Undercutting Any Interest.

The district court says "both Chula Vista and California require a ballot initiative [to] be officially and formally proposed by an 'elector'" and cites Charter

§ 903 and Code § 342 as support. ER–4. The district court says that "Plaintiffs do not disagree [with this statement and the court's articulation of the legal framework of the Natural-Person Requirement], but argue that the natural person requirement offends the First Amendment . . . ." ER–4. Plaintiffs do agree that the City and State *require* initiative proponents to be electors but disagree that any provision *mandates* this *for the City*, having challenged the relevant provisions *as enforced* and *understood by Defendants*, *see, e.g.*, ER–41 (VC–¶ 3), ER–72 (VC–¶ 175). Moreover, as shown below, other cities in similar situations *allow* associations to be initiative proponents without evidence of problems.

Why do these facts matter? The facts that the *people* of Chula Vista assert no governmental interests here and that there is no evidence of problems with associations as initiative proponents undercut any purported interest supporting such a Requirement.

Regarding whether any provision mandates the City's Requirement, the court first cites Charter § 903, "reserv[ing] to the electors . . . the powers of the initiative . . . ." But this only requires that electors *adopt or reject* initiatives without saying *how* initiatives are *presented to the electors*. Charter § 903 incorporates by reference Code § 342, which the court cites next. When this suit was filed, § 342 merely defined "proponent" as "persons" (emphasis added):

"Proponent or proponents of an initiative . . ." means, for *statewide* initiative

8

. . . measures, the *person or persons* who submit a draft of a petition proposing the measure to the Attorney General . . . ; or for *other* initiative . . . measures, the *person or persons* who publish a notice or intention to circulate petitions, or . . . file petitions . . . .

After litigation began, California amended § 342 to require that *statewide* initiative proponents be *electors*, but proponents in *other* initiatives may yet be *persons*:

"Proponent or proponents of an initiative . . ." means, for statewide initiative . . . measures, the ~~persons or persons~~ elector or electors who submit ~~a draft of a petition proposing the measure~~ the text of a proposed initiative . . . to the Attorney General . . . ; or for other initiative . . . measures, the person or persons who publish a notice or intention to circulate petitions, or . . . file petitions . . . .

*See* 2009 Cal. Legis. Serv. Ch. 373 (A.B. 753) (West). So the City's incorporation of Code § 342 through Charter § 903 also incorporates this distinction, meaning that proponents of City initiatives *need not be* electors and that California asserts no interests supporting the City's Requirement.

The court cites California Constitution, Article II, § 8 (ER–7), which merely states that electors "propose" and "adopt or reject" provisions (emphasis added):

(a) The initiative is the power of the electors to *propose* statutes and amendments . . . and to *adopt or reject* them.
(b) An initiative measure may be *proposed* by presenting to the Secretary of State a petition that sets forth the text of the proposed statute or amendment . . . and is certified to have been *signed by electors* equal in number to . . . [the required percentages].
(c) The Secretary of State shall then submit the measure at the . . . [proper election].

This merely says that electors "propose" initiatives by signing petitions in suffi-

cient number to qualify them for the ballot and then "adopt or reject" them. It says nothing about who may be proponents. Code § 342, which controls in any event, clarifies that proponents need only be *persons* in non-statewide initiatives. Though the Code does not define "person," in Code § 342 it is clearly broader than "elector," and "person" is uniformly defined in other provisions to include associations. *See, e.g.*, Cal. Gov. Code §§ 6252(c), 82047.

So the Charter and Code provisions do not *mandate* that City initiative proponents be individual electors. The *people* of Chula Vista assert no interests in refusing to allow associations to be proponents. Only City *officials* require that City initiative proponents be electors.

But other California jurisdictions (including some also basing their law on the Code) allow organizations to be proponents. San Diego permits organizations to serve as proponents, its Code providing that "if the proponent is an organization, the signatures of two officers of the organization" are required on the copy of the notice of intent to circulate to be filed with the city clerk. San Diego Mun. Code § 27.1003(a)(2).[7] Santa Barbara is a charter city that incorporates the Code to govern municipal initiatives.[8] The charter city of Glendale does, too.[9] If California law

---

[7] *Available at* http://docs.sandiego.gov/municode/MuniCodeChapter-02/Ch02Art07Division10.pdf (last visited Aug. 14, 2012).

[8] Charter of Santa Barbara, § 1303 ("There are . . . reserved to the electors . . . the powers of the initiative . . . . The . . . Elections Code . . . , shall apply . . . ."). *Available at* http://www.santabarbaraca.gov/Documents/City_Charter/City_Char-

requires that proponents be individual electors, Santa Barbara and Glendale would likely ban organizational proponents. Yet, it appears that Santa Barbara[10] and Glendale[11] have both allowed organizations to serve as proponents for initiatives. Case law reveals many decisions involving ballot measures with organizations as proponents in California. It appears taken for granted that organizations can serve as proponents or do what proponents do.[12] And evidence provided by the State in

---

ter_Documents/Santa_Barbara_City_Charter.pdf (last visited Aug. 14, 2012).

[9] Charter of Glendale, Art. XVIII, § 1 ("The laws of the State . . . for the initiative . . . are hereby made a part of this Charter . . . ."). *Available at* http://www. ci.glendale.ca.us/gmc/charter.asp#18 (last visited Aug. 14, 2012).

[10] Santa Barbara, City Council Minutes (July 11, 2006) (audio at 46:02 reporting certified initiative petition from the Sensible Santa Barbara Committee). *Available at* http://santabarbara.granicus.com/MinutesViewer.php?view_id =6&clip_id=41 (minutes); http://http://santabarbara.granicus.com/MediaPlayer.php?view_id=6&clip_id=41&meta_id=6124 (audio) (last visited Aug. 14, 2012).

[11] *Glendale Tenants Ass'n v. City of Glendale* 2005 WL 419409 (Cal. App. 2 Dist.) (2005) (Property Owners for Property Rights Protection was proponent for Glendale initiative).

[12] *See, e.g., U.S. v. Oakland*, 958 F.2d 300, 301 (9th Cir. 1992) ("Nuclear Free Oakland, Inc. and Steven Bloom" "the proponents"); *MHC Financing Ltd. Partnership v. City of Santee*, 125 Cal.App.4th 1372 (2005) (group CTRF submitted the completed sections of the initiative petition); *Glendale Tenants Ass'n v. City of Glendale*, 2005 WL 419409 (Cal.App. 2 Dist.) ("Property Owners For Property Rights Protection sought to place initiative on ballot"); *Alliance for a Better Downtown Millbrae v. Wade*, 108 Cal.App.4th 123, 127 (2003) (Alliance for a Better Downtown Millbrae circulated initiative petition); *Save Stanislaus Area Farm Economy v. Board of Supervisors of the County of Stanislaus*, 13 Cal.App. 4th 141, 144 (1993) (proponent was group SAFE); *Citizens for Responsible Behavior v. Superior Court*, 1 Cal.App.4th 1013, 1019 (1992) ("The proponent and circulator of the initiative, and petitioner here, is a nonprofit corporation[.]"); *Coalition for Fair Rent v. Abdelnour*, 107 Cal.App.3d 97, 101 (1980) (Coalition For Fair Rent, "most of whom are registered voters and residents of the City of San

summary-judgment briefing showed two initiatives slated for the November 8, 2011 ballot, in the City and County of San Francisco that were proposed by non-natural persons. ER–30 (listing "SFUSD" as proponent for school-bonds ballot measure and "Committee to Stop Mass Demolition of Housing" as circulating initiative petitions on zoning referendum).

The district court responds that "[n]one of these cases address the question of whether an association or corporation may be an official proponent" and that in another case (involving a *statewide* initiative) the proponents were electors. ER–10 n.9. But that fails to answer Plaintiffs' arguments that other jurisdictions do not read the same or similar provisions as mandating the Natural-Person Requirement without proven harm, which indicates that the people and their legislatures have not asserted any interests in such a Requirement as to local initiatives, and no adequate interests support it. Yet the City Defendants require that initiative proponents be individual electors. That policy is subject to First Amendment scrutiny.

**B. Associations' Right to Be Proponents Is Fully Protected by First Amendment Rights to Speech, Association, and Petition Under Strict Scrutiny.**

The district court says that acting as a proponent "is a legislative act," and, if it "is speech to some degree," "[i]t is . . . closer to the mechanics of the ballot initia-

---

Diego," circulated initiative petition as proponent).

tive process," so it upholds the Natural-Person Requirement under deferential, rational-basis review. ER–11. The court is wrong for at least nine reasons, so full First Amendment strict-scrutiny protection applies.

First, the court acknowledges that associations (incorporated or not) have First Amendment rights, but says they may not "propose legislation" as initiative proponents, ER–5-6, because "[t]he [p]ower of [i]nitiative [i]s [r]eserved to the [p]eople," ER–7. But the reservation of initiative power to the people does not address *who may ask* electors to propose (by signing petitions) that an initiative be on the ballot and to vote for the initiative, thereby turning a proponent's idea into law. *See supra* at 9-10. So the court's assertion that "Plaintiffs do not come to terms with the idea that the natural person citizens of Chula Vista may constitutionally reserve to themselves the power to make law," ER–9, is fundamentally erroneous because reserving the initiative power to electors  does not preclude associations (including associations of electors) from asking the electors to sign petitions then vote on an initiative. So provisions and cases saying that the initiative power is reserved to the people (or electors) say nothing to the issue here. Where associations act as proponents, *see supra* at 10-12, the power of initiative is as much reserved to the people as in Chula Vista because only individual electors sign petitions and vote on initiatives.

Moreover, the fact that the initiative right is "reserved by the people in the

13

State constitution," *Grant v. Meyer*, 828 F.2d 1446, 1455 n.14 (10th Cir. 1987)

("*Meyer-I*"), *aff'd*, 486 U.S. 414 (1988) ("*Meyer-II*"), did not prevent the application of strict scrutiny to a ban on the right of ballot *proponents* to employ paid petition-circulators, the expenditures for which "advance the [proponents] own political expression for the ballot measure, a right of communication given constitutional protection," *id.* at 1457. Note that proponents arranged for circulation and hired circulators, so proponents do more than mere "initiation," construed narrowly, which is central to the following point.

Second, the court asserts that "acts of ballot initiation are qualitatively different than acts engaging in First Amendment dialogue or circulation or advocation," for which it cites *Angle v. Miller*, 673 F.3d 1122, 1133 & n.5 (9th Cir. 2012), as saying that "'[t]here is no First Amendment right to place an initiative on the ballot,'" ER–7. This assertion baldly *claims* that "initiation" differs from "dialogue," "circulation," and "advocation," without showing that they *are* different for First Amendment purposes, or that (narrowly construed) "initiation" is all proponents do, or that "initiation" is just ministerial signing and filing things. Describing what a proponent does to advocate an issue by initiative as only "initiation" (narrowly construed to exclude "dialogue," "circulation," and "advocation") deprives proponents of First Amendment rights by labeling. It is the sort of effort repudiated in *Meyer-I*, which rejected the notion that "petition circulators are 'election judges'

14

. . . . [And] any discussion of the merits of the petition is inconsistent with the circulator's governmental responsibilities." 828 F.2d at 1453 n.10. Just as being a petition-circulator is more than being a cog in a governmental process, so being a proponent involves core political activity beyond ministerial acts of signing and filing things. A "proponent" begins with an idea about an issue, creates the text of an initiative to implement that idea, does the necessary publication of notices to qualify it, circulates petitions and/or arranges with others to do so, and advocates for the initiative. That is pure political issue-advocacy, most highly protected by the First Amendment under strict scrutiny.

Third, the *Angle* quote cited by the court, ER–7 ("'no First Amendment right to place an initiative on the ballot'"), does not support the notion that initiation, circulation, and advocation are different "qualitatively" or in First Amendment protection, even if "initiation" were all proponents do. The court makes a greater-includes-the-lesser argument, i.e., because initiatives need not be permitted, there is no First Amendment protection for being a proponent. Such argument was rejected in *Meyer-I*. 828 F.2d at 1455-56. *Angle* rejected this argument in the passage the court below cites: "The state's power to ban initiatives thus does not include the lesser power to restrict them in ways that unduly hinder political speech." 677 F.3d at 1133 n.5 (citing *Meyer-II*, 486 U.S. at 424-25). As the Supreme Court said in the judicial-election context, while judges need not be elected,

15

"[i]f the State chooses to tap the energy and the legitimizing power of the democratic process, it must accord the participants . . . the First Amendment rights that attach to their roles." *Republican Party of Minnesota v. White*, 536 U.S. 765, 788 (2002) (citations (including to *Meyer-II*) omitted). That concept controls here. The people need not permit initiatives, but *if* they allow them, *then* full First Amendment protection for participants attaches.

Fourth, the Court's "qualitatively different" argument flounders on the basis on which the unanimous Supreme Court in *Meyer-II* decided that initiative-petition circulation is entitled to strict-scrutiny free-speech protection, i.e., because "[t]he circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change," 486 U.S. at 421. As noted above, a proponent starts by expressing an *idea about an issue* that the proponent believes should be law, then the proponent *crafts specific language* to make it so, satisfies the notice and publication rules for that language, circulates petitions (or hires it done) to get sufficient electors' signatures to propose that language on the ballot, *advocates* for that idea and language, and (hopefully) persuades sufficient electors to vote for that idea and language to become law. That activity is as much about ideas, expression, a desire for change, and discussing the proposed change's merits as is the work of a petition circulator, and more so.

16

Fifth, the district court's argument is remarkably like the *losing* analysis leading up to the Supreme Court's decision in *Meyer-II*. In *Grant v. Meyer*, 741 F.2d 1210 (10th Cir. 1984) (per curiam), initiative *petitioners* had sued because they were denied the ability to amplify their petition-circulation efforts by *hiring* paid circulators. The district court rejected their claim in an opinion that two circuit judges adopted, saying that no First Amendment rights were involved—*not* because the plaintiff-*proponents had none*, but because paying circulators didn't involve the proponents' "personal rights of speech," "only limit[ing] their ability to pay someone else to speak." *Id.* at 1213. And the panel said that the proponents' "ability to spend money on every other form of thought-dissemination is totally unfettered," *id.*, which is similar to an argument by the court below herein discussed below. So this *Meyer* appellate panel decided that the paid-solicitor ban "is not a burden on their first amendment rights" and therefore "not . . . constitutionally onerous." *Id.* Assuming a speech-burden arguendo, the court then said that the asserted "interests[s] in protecting the integrity of the process and in insuring . . . a sufficiently broad base of support" sufficed to justify the ban. *Id.* at 1213-14. The dissenter insisted that the ban was a burden First Amendment rights because "[i]t impedes the *sponsors'* opportunity to convey *their* views to the public. It curtails the discussion of issues that normally accompanies the circulation of initiative petition. And it shrinks the size of the audience that can be reached." *Id.* at 1219

17

(Holloway, J., dissenting) (emphasis added).

The dissenter's view that the *proponent's* speech was burdened by the paid-circulator ban prevailed, and he restated his formally dissenting opinions *for the court. Meyer-I*, 828 F.2d 1446, 1452 (en banc). *Meyer-I* made it clear that *proponents* "advance . . . [their] own political expression" in their activities to qualify and enact an initiative. 828 F.2d at 1457. This view again prevailed before the Supreme Court in *Meyer-II*, which decided that the free-speech rights of the *proponents*, 486 U.S. at 417 ("[a]ppellees are proponents"), were burdened by the ban: "We fully agree with the Court of Appeals' conclusion that this case involves a limitation on political expression subject to exacting [i.e., strict] scrutiny." *Id.* at 420. That it was the *proponents*' (appellees') rights that got strict scrutiny is reinforced by the Court's reaffirmation that "[t]he First Amendment protects appellees' right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.* at 424. In other words, the First Amendment rights of *both* petitioners (appellees) *and* their paid circulators (not before the Court) are at issue in the initiative process and both were burdened there as proponents' rights are burdened here—and the whole initiative-advocacy enterprise is protected by strict scrutiny.

Sixth, just as *Meyer-II* rejected the notion that the availability of other means of expression meant there is no First Amendment burden, *id.*, the same assertion

18

by the court herein, ER–8, must be rejected. The fact that "corporations and associations may . . . promote, discuss, debate, underwrite, or advocate for or against a ballot measure," ER–8, does not reduce the First Amendment burden on associations and their members of being unable to associate and speak as proponents. *Cf. FEC v. Wisconsin Right to Life*, 551 U.S. 449, 477 n.9 (2007) ("*WRTL-II*") (Roberts, C.J., joined by Alito, J.) ("the response that a speaker should just [do permitted speech] rather than complain that it cannot speak [as desired] is too glib").

Seventh, the argument that members of an association may speak in other ways, ER–8, ignores the clear burden here on other First Amendment *association* rights by the Natural-Person Requirement. The right of electors (such as Kneebone and Breitfelder) to *associate* to enhance their efforts (e.g., as members of Chula Vista Citizens) is protected by the First Amendment right to expressive association, *see, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) ("group association is protected because it enhances '(e)ffective advocacy'"), which is protected by strict scrutiny, *see, e.g.*, *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) ("Infringements on [the right to associate for expressive purposes] may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."). Even if the right to be an initiative proponent belonged solely to "electors," forbidding *electors* to *associate* to enhance their

advocacy directly and severely burdens the right to associate, as it does their right to petition[13] the people (the true sovereigns) (which is akin to protected lobbying).

Eighth, even if the reliance of the court below on *Angle* (ER–7) were apt, the test articulated in *Angle* would require strict scrutiny here. That test was employed to review Nevada's requirement that initiative proponents get required signatures in *all* congressional districts. 673 F.3d at 1127. The court decided that "as applied to the initiative process, we assume that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot." *Id.* at 1133. In the present case, would-be proponents are *prohibited* from placing initiatives on the ballot because they cannot *be* proponents, so strict scrutiny would apply. But the *Angle* test does not apply because it is not about who can *be* a proponent (as here), but about the seriousness of burdens on those who *can* be proponents. And in any event, *Meyer-II* applied *normal* First Amendment analysis to *proponents* rights in the initiative context. *See supra* at 17-18.

Ninth, the court tries to mitigate the burden by arguing that there is really no "ban" involved—"in the sense that there could be a criminal or civil penalty for speaking." ER–7 n.8. But if one cannot *be* an initiative proponent because of a law

---

[13] The "initiative procedure is one means of preserving citizens' 'unquestioned right to petition their governments for redress of what they believe are grievances.'" *Meyer-I*, 828 F.2d at 1455 (citation omitted).

20

or policy, one is *banned* by that law or policy, regardless of whether there is a penalty for trying. If the Clerk refuses to accept the filings of an association of electors acting as a proponent, they  have been banned from being a proponent. The First Amendment does not countenance the notion that there is no burden on speech, association, and petition because there is no *penalty* for efforts made *futile* by governmental actions.

In sum, the Natural-Person Requirement *does* impose substantial burdens on core political speech in violation of First Amendment rights of expression, association, and petition. So strict scrutiny applies, as *Meyer-II* established long ago in this context. *See supra*. "Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. FEC*, 130 S.Ct. 876, 898 (2010) (citations omitted) ("*Citizens*"). The City and State made little effort to meet their strict-scrutiny burden, which effort would fail anyway, as shown next.

## C.  The Natural-Person Requirement Is Unconstitutional.

As established above, Chula Vista Citizens and ABC want to be initiative proponents but the City and State require that proponents be individual electors. Because First Amendment rights apply, the Natural-Person Requirement is unconstitutional for five reasons.

21

### 1.   The Requirement Impermissibly Bans Political Speech.

Initiative petitions involve "'core political speech.'" *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006) (quoting *Meyer-II*, 486 U.S. at 421-22). Banning political speech during the critical pre-election period is impermissible. *Citizens*, 130 S.Ct. at 911. Yet the Natural-Person Requirement bans the political speech of associations as proponents during the pre-election period. No association is allowed to speak by offering a ballot initiative to the voters as a proponent. Associations must either convince a member to speak by proxy or remain silent. But speech-by-proxy is not a constitutionally permissible alternative because it does not allow associations *themselves* to speak. *Id*. at 897 (speech-by-proxy PAC-alternative is still a corporate-speech ban because the corporation itself may not speak). The Requirement is thus an outright ban on the speech of associations though associations' members may speak. "An outright ban on corporate political speech during the critical preelection period is not a permissible remedy." *Citizens*, 130 S.Ct. at 911.

The district court argues that there is no ban because there is no speech because "ballot initiation [is] qualitatively different from . . . the First Amendment dialogue of circulation or advocacy." ER–7. This has already been refuted. *See supra* Part I.B. The court argues that there really isn't a ban because there is no "criminal or civil penalty for speaking." ER–7. Again, this has already been re-

22

futed. *See supra* at 19-20. In sum, the court fails to show that there is no ban, so this Requirement is unconstitutional.

## 2. The Requirement Impermissibly Bans Disfavored Speakers' Speech.

The First Amendment protects speech regardless of the speaker, *id*. at 899, even when speakers are corporations. *Citizens*, 130 S.Ct. at 899-00 (citing *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n.14 (1978)). The political speech of associations cannot "be treated differently under the First Amendment simply because such associations are not 'natural persons.'" *Id.* at 900. There is a "First Amendment principle that the Government cannot restrict political speech based on the speaker's corporate identity." *Id*. at 902. Government may not "distinguish[] among different speakers, allowing speech by some but not others," *id*. at 898, or "dictat[e] the . . . the speakers who may address a public issue," *id*. at 902. Doing so "deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice." *Id*. at 899. This is impermissible under the First Amendment. *Id*. Consequently, "the Government may not suppress political speech on the basis of the speaker's corporate identity." *Id*. at 913.

Despite the First Amendment's intolerance for governmental discrimination against speakers on the basis of their identity, the Natural-Person Requirement prohibits incorporated and unincorporated associational speakers from offering

ballot measure initiatives for no other reason than their identity as non-natural persons. The "purpose and effect" of speech bans like this Requirement "is to prevent corporations . . . from presenting both facts and opinions to the public." *Id*. at 907. Such laws cannot stand: "[a]n outright ban on corporate political speech during the critical preelection period is not a permissible remedy." *Id*. at 911. The Requirement is therefore unconstitutional.

The district court tries to diminish *Citizens*'s holding that corporations have full speech rights by arguing that "[n]ot all courts read *Citizens United* as granting corporations political speech rights coextensive with the rights of individuals," for which it cites cases upholding bans on corporate political contributions. ER–6. Neither corporate contributions nor reasons to ban them are at issue here so this statement is beside the point. The court argues the danger posed by "foreigners" and corporations:

> Permitting a corporation or association to be a ballot initiative proponent could lead to local laws being proposed by foreigners unready to contribute to the city or bear the responsibility of citizenship. Worse, corporations with assets, operations, or shareholders located outside the city, state, or country might propose initiatives adversely affecting the welfare of citizens of Chula Vista, in order to gain a business advantage elsewhere.

ER–9.

This argument is analytically and constitutionally wrong on multiple levels. Regarding who "proposes" an initiative, *electors* who sign petitions in sufficient

numbers *propose* an initiative by qualifying it to be on the ballot so electors can vote on it. So foreigners, associations, and corporations cannot actually "propose" an initiative. And nothing that proponents initiate could advance unless *electors act* on a suggested idea by proposing it through petition signing and enacting it at the ballot box, so there could be no adverse effect from any initiative that could not be *attributed to the electors*.

The only purported problem the court recites that might be attributable to corporate (or other associational) *proponents* is that they might "drown out the legislative ideas of the City's citizens." ER–9. But the First Amendment precludes this drown-out argument. In *Bellotti*, the Supreme Court held, under strict scrutiny, that a ban on corporate ballot-measure advocacy violated the First Amendment. 435 U.S. at 795. It rejected the argument that "corporations are wealthy and powerful and their views may drown out other points of view," *id.* at 789 (noting that the government had failed its burden of showing any such problem, *id.* at 789-90), holding that "the fact that advocacy may persuade the electorate is hardly a reason to suppress it," *id.* at 790. And *Bellotti* held that "'the concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment.'" *Id.* at 790-92 (quoting *Buckley*, 424 U.S. at 48-49). *Bellotti* then rejected the paternalism evident in the justification offered by the court herein below, holding that "the people . . .

25

are entrusted with the responsibility of judging and evaluating the relative merits of conflicting arguments," *id.* at 791, and "[t]hey may consider . . . the source and credibility of the advocate," *id.* at 791-92. *Citizens* reaffirmed the unconstitutionality of restricting the voice of some to enhance the voice of others. 130 S.Ct. at 904. If corporations cannot be banned from advocating initiatives or candidates based on a drown-out theory, they cannot be banned from being proponents on a drown-out theory. The district court failed to require the government to meet its duty to demonstrate that a drown-out theory rejected in the first two contexts somehow survives in the present context or that there is any factual basis to believe that associations (incorporated or not) as proponents pose cognizable dangers, which would be belied in any event by the experience of other cities with organization proponents with no evidence of problems. *See supra* at 10-12..

The district court relied particularly on the notion that "foreigners" (i.e., other Americans, perhaps from a neighboring California city) and "corporations with assets, operations, or shareholders located outside the city, state or county might propose initiatives . . . ." ER–9. This anti-other-Americans argument was recently made by Montana in trying to avoid application of the holding of *Citizens*, 130 S.Ct. 876—that corporations have free-political-speech rights—to Montana by arguing that "government has a compelling interest in regulating non-citizen participation in activities of democratic self-government." Brief in Opposition [to

26

Certiorari] at 22, *American Tradition Partnership v. Bullock*, 132 S.Ct. 2490

(2012) ("*ATP*").[14] But this idea that one political jurisdiction can shut other Ameri-

cans out of core political expression and association was rejected by the Supreme

Court in summarily reversing the Montana Supreme Court's decision. *ATP*, 132

S.Ct. 2490 (per curiam). First Amendment rights transcend political boundaries

and may not be foreclosed by paternalistic efforts to protect the home folks from

"foreigners."

As applied to Chula Vista Citizens, the "foreigner" argument especially fails

because it is a ballot-measure committee formed to pass the Initiative in Chula

Vista and at least two of its members, Kneebone and Breitfelder, are City electors.

*See supra* at 4-5. These are not "foreigners," so that argument, even if constitu-

tional, has no application.

### 3. The Requirement Impermissibly Requires Speech-By-Proxy.

Forcing incorporated and unincorporated associational speakers to speak by

proxy is unconstitutional. *Citizens* held a ban on corporate general-fund independ-

ent expenditures to be an "outright ban" on corporate speech notwithstanding the

fact that corporations could speak by proxy by creating PACs to speak on their

behalf. *Id*. at 897. The Court explained that PACs "do[] not allow corporations to

---

[14] *Available at* http://www.jamesmadisoncenter.org/cases/files/2012/02/2012_
0517_RespondentsBIO1.pdf.

27

speak" because "[a] PAC is a separate association from the corporation." *Id*. Forcing corporations to engage in speech-by-proxy by employing PACs was a "burdensome" and "onerous" alternative that the Court held unconstitutional. *Id*. at 897-98, 913.

Like the speech-by-proxy requirement held unconstitutional in *Citizens*, the Natural-Person Requirement bans speech by incorporated and unincorporated associations, requiring members to speak by proxy on their behalf. This is a more burdensome alternative because it forces associations' members unnecessarily into the public eye, when the true speaker is the association. The Supreme Court has repeatedly explained that speech-limiting laws are not cured of First Amendment defects simply because they leave available other, more burdensome, avenues for speech. *See, e.g.*, *Citizens*, 130 S.Ct.at 897-98 (PAC-option burdensome and an impermissible substitute for corporate speech); *Meyer-II*, 486 U.S. at 424 (alternatives do not relieve speech burden); *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238, 255 (1986) (plurality opinion) ("*MCFL*") (same).

The district court dismisses this speech-by-proxy analysis because, it claims, First Amendment rights are not involved in being an initiative proponent. ER–12. But the court is wrong that First Amendment rights are not burdened here. *See supra* Part I.B. The Natural-Person Requirement thus permits only speech-by-proxy for associations, which is impermissible under *Citizens* and unconstitutional under

28

the First Amendment.

### 4. The Requirement Creates an Unconstitutional Condition.

The First Amendment protects *both* political speech and political association. *Buckley*, 424 U.S. at 15. Included within the right to associate is the right to privacy in one's associations. *Id*. at 64; *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Chula Vista Citizens and ABC ("Association-Plaintiffs") and their members thus have two fundamental First Amendment rights at stake in this litigation. They have a First Amendment right to engage in political speech through the ballot initiative process. *See Bellotti*, 435 U.S. at 774-76 (corporations' ballot measure speech is fully protected by the First Amendment). They also have a First Amendment right to privacy of association. But the Natural-Person Requirement forces the Association-Plaintiffs to choose between these two protected rights. They may *either* engage in the protected political speech inherent in initiative petitions by revealing one of their members as the proponent of their initiative, *or* they may allow their members to associate without being revealed to the government. They may not, however, exercise both their right to speak and their right to privacy in their associations.

Forcing incorporated and unincorporated associations to choose between constitutional rights is an impermissible unconstitutional condition. *Simmons v. United States*, 390 U.S. 377, 391 (1968). The basic doctrine of unconstitutional

29

conditions "limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *U.S. v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006). *See also Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006) ("*FAIR*") (unconstitutional condition doctrine prohibits government from "deny[ing] a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit" (internal citations omitted)). The most egregious form of unconstitutional conditions is the "intolerable" situation where persons must choose between exercising one of two constitutional rights. *Simmons*, 390 U.S. at 393. This is an "especially malignant" form of the unconstitutional-conditions doctrine. *Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004).

The Supreme Court first recognized this especially problematic form of unconstitutional conditions in *Simmons*, 390 U.S. 377. Simmons was forced to choose between his Fifth Amendment right against self-incrimination and his right to assert a claim under the Fourth Amendment's protection against warrantless search and seizure. *Id*. at 394. The Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another" and struck down the "choice" as an unconstitutional condition. *Id*. The Court reached a similar conclusion in *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977). In that case a prominent political figure was required to "forfeit one constitutionally protected right as the

30

price for exercising another." *Id*. at 807–08 (citing *Simmons*, 390 U.S. at 394).
Lefkowitz was deprived of a political office under a New York statute in violation
of "his [First Amendment] right to participate in private, voluntary political associ-
ations" when he exercised his Fifth Amendment right and "refused to . . . give
self-incriminating testimony." *Id*. This, the Court held, was an unduly coercive and
unconstitutional condition. *Id*.

    *Simmons* and *Lefkowitz* together show that the protection under the doctrine of
unconstitutional conditions is at its apex when persons are forced to choose be-
tween constitutional rights. Conditions on the receipt of some generally available
statutory or monetary benefit may be constitutional if the conditions pass a balanc-
ing test. *See, e.g.*, *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). The constitu-
tion cannot tolerate, however, one of its protections being conditioned on the re-
linquishment of another. Characterizing the decision between exercising only one
of two constitutional rights as a "choice . . . to give up [a] benefit" is improper be-
cause "situations in which the 'benefit' to be gained is that afforded by another
provision of the Bill of Rights [pose] an ['intolerable' and] undeniable tension."
*Simmons*, 390 U.S. at 394. In such cases, there is no need to perform a balancing
test: the condition itself is unconstitutional. *Id*.

    The Natural-Person Requirement requires the Association-Plaintiffs to choose
between two constitutional rights. They may *either* exercise their First Amend-

31

ment right to speak (at least by proxy), by convincing one of their members to identify themselves to the world as a proponent-by-proxy, *or* they may exercise their First Amendment right to enjoy privacy in their associations, by allowing their members to remain anonymous. They may not do both. This forced "choice" is no choice at all, but an unconstitutional condition. *Simmons*, 390 U.S. at 394. *See also U.S. v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003) (unconstitutional to force defendant to choose between constitutional rights); *Scott*, 909 F.2d at 493 (same). The Natural-Person Requirement is therefore unconstitutional. The district court dismissed this argument on the basis that "[n]either corporations nor unincorporated associations have the right to engage in the 'speech' of officially proposing a ballot measure." ER–12. But as shown above, First Amendment rights are burdened by the Natural-Person Requirement, requiring protection of First Amendment rights in this case. *See supra* Part I.B.

### 5. The Requirement Fails Strict Scrutiny.

Under strict scrutiny, the *government* must prove that the Requirement "furthers a compelling interest and is narrowly tailored to achieve that interest." *WRTL-II*, 551 U.S. at 464 ; *Citizens*, 130 S.Ct. at 898 (same). The City and State have no compelling interest in the Natural-Person Requirement. The law is therefore unconstitutional.

*Citizens* held that the only interest that can justify limits on political speech is

the interest in preventing quid-pro-quo corruption. *Citizens*, 130 S.Ct. at 901, 909. The Court explicitly rejected all other purported interests. *Id*. at 903-13. There is no interest in limiting corporate speech on the basis of the corporate identity of the speaker. *Id*. at 913. Nor is there an interest in limiting corporate speech because corporations possess wealth that might be used to influence or distort elections. *Id*. at 903-05. Nor is there an interest in limiting speech because it might gain the speaker access to, or influence with, candidates or elected officials. *Id*. at 910. Nor is there an interest in limiting corporate speech because dissenting shareholders might need protection. *Id*. at 911. *Only* the anti quid-pro-quo corruption interest can support limits on political speech. *Id*. at 901, 909.

The City and State have no constitutionally cognizable interest in limiting associational ballot measure speech because the risk of quid-pro-quo corruption is "not present" in popular votes on public issues. *Bellotti*, 435 U.S. at 790; *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 203 (1999) ("*ACLF*"). Because the City has no compelling interest to support its ban on political speech, the Natural-Person Requirement fails strict scrutiny and is unconstitutional.

In sum, the Natural-Person Requirement is a ban on speech. It discriminates on the basis of the speakers' identity. It forces incorporated and unincorporated associations to speak by proxy. It creates an unconstitutional condition. And it fails strict scrutiny. For each of these reasons, the Natural Person Requirement is un-

33

constitutional under the First Amendment.

## II. The Requirement that Proponents Disclose Their Identity on the Circulated Version of the Initiative Petition Is Unconstitutional.

Code § 9207 requires that "[e]ach section of the petition" as circulated among the voters "bear a copy" of the notice of intent to circulate that was filed with City Clerk.[15] These sections force proponents to disclose their identities at the point of contact with the voters ("Reveal-Yourself Requirement"), which requirement is unconstitutional because it (A) prohibits anonymous petition-circulation speech to the voters and (B) is an impermissible, content-based speech proscription.

### A. The Reveal-Yourself Requirement Impermissibly Bans Anonymous Petition Circulation.

#### 1. The First Amendment Protects Anonymous Petition-Circulation Speech.

Placing a petition before the voters "involves 'interactive communication concerning political change.'" *ACLF*, 525 U.S. at 186 (quoting *Meyer-II*, 486 U.S. at

---

[15] Three separate disclosures of personal, identifying information are required by for those who wish to propose a City initiative petition. The first disclosure is compelled by Code § 9202, requiring at least one initiative proponent to provide his or her name and signature on the initial Notice of Intent to Circulate Petition that must be filed with the City Clerk (**"Clerk's Version"**). The second disclosure is compelled by Code §§ 9202 and 9205, requiring the proponent to provide his or her name and signature on the copy of the Notice of Intent to Circulate Petition that must be published in the local newspaper (**"Newspaper Version"**). The third disclosure is compelled by Code §§ 9202 and 9207, requiring the proponent to provide his or her name on each section of the initiative petition circulated among the voters for signatures (**"Circulated Version"**). Plaintiffs challenge only this *third* requirement.

422). It is "'the expression of a desire for political change and a discussion of the merits of the proposed change.'" *Id*. at 199 (quoting *Meyer-II*, 486 U.S. at 421). Petition circulation is thus "core political speech" for which the First Amendment's protection is "at its zenith." *Id*. 525 at 186-87 (quoting *Meyer-II*, 486 U.S. at 422, 425).

The First Amendment's protection for petition circulation includes protection for *anonymous* circulation, *see Washington Initiatives Now v. Rippie*, 213 F.3d 1132 (9th Cir. 2000) ("*WIN*"); *ACLF*, 525 U.S. at 197-200, as established in *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), which held that the First Amendment protects anonymous political speech to voters about ballot measures. *Id.* at 342. The decision to engage in anonymous speech "may be motivated by fear of economic or official retaliation, by concern about social ostracism, . . . by a desire to preserve as much of one's privacy as possible," *id*. at 341-42, or by the belief that ideas will be more persuasive if the identity of the proponent is unknown, *id*. at 342. The right to anonymity remains, *id*. at 343, because "the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry," *id*. at 342.

The Ninth Circuit embraced and extended *McIntyre*'s reasoning in *ACLU v. Heller*, 379 F.3d 979 (9th Cir. 2004), holding that the right to anonymous speech

35

in ballot-measure contexts applies to associations. The *Heller* court applied strict scrutiny to a law banning anonymous ballot-measure related speech, *id*. at 1002, and ruled that "[t]he reasons given by *McIntyre* for protecting anonymous speech apply regardless of whether an individual, a group of individuals, or an informal 'business or social organization' is speaking," *id*. at 989. The court explained that "[r]equiring a political communication to contain information concerning the identity of the speaker is no different from requiring the inclusion of other components of the document's content that the author is free to include or exclude." *Id*. at 989 (internal citation and quotation omitted). Government is prohibited from dictating the content of a speaker's message, and laws doing so must survive strict scrutiny and use "the least restrictive means" to further any interest. *Id*. at 992-93.

Recent Supreme Court decisions upholding disclosure in other contexts have not altered the rule of *McIntyre* and *Heller* that anonymous ballot-measure speech is protected by the First Amendment. Nor have they changed the rule of *ACLF* and *WIN* that those who circulate petitions may do so anonymously at the point of contact with voters. For instance, *Citizens* upheld on-ad disclosure for expenditures in *candidate* elections. 130 S.Ct.at 913-14. But candidate elections and ballot-initiative votes differ, and rules applying to one do not always apply to the other. *See, e.g.*, *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 297-300 (1981) ("*CARC*") (contributions to ballot-measure committees may not be limited because

the risk of corruption present in candidate elections is absent in popular votes on ballot issues). *Buckley* said that informational and anti-corruption interests may undergird disclosure requirements in *candidate* elections. 424 U.S. at 66-67. *Citizens*'s ruling upholding disclosure for speech in the candidate-election context relied on those interests. 130 S.Ct.at 914. But *Citizens* said nothing about forced identification of speakers advocating ballot measures, and the interests it relied on have no application in that context.

Similarly, *Doe v. Reed*, 130 S.Ct. 2811, upheld disclosure of voters signing ballot-measure petitions. *Id*. at 2815-16. Signature-gatherers may falsify signatures, and petition-signers may mistakenly think they are registered to vote when they are not. *Id*. at 2821. The *Doe* Court found disclosure of those signing ballot measure petitions was supported by the interest in allowing the public to verify that enough registered voters signed the petition to qualify it for the ballot. *Id*. But that interest does not support the identification of proponents at the point of contact with voters. And *Doe* did not consider anonymous petition circulation.

Neither *Citizens* nor *Doe v. Reed* abrogated the right of proponents of ballot initiatives to engage in anonymous speech at the point of contact with the voters. *McIntyre*, *ACLF*, *WIN*, and *Heller* remain controlling law for this Court.

### 2. The Reveal-Yourself Requirement Burdens and Chills Speech.

The Reveal-Yourself Requirement forces initiative proponents to reveal their

identity on each page of the initiative petition circulated among the electorate. *See* Code § 9207. This Requirement burdens speech because it denies proponents the right to anonymity, which the First Amendment guarantees. It also chills speech because some would-be proponents will not offer initiative proposals if they must identify themselves at the point of contact with voters.

The Supreme Court's *ACLF* decision is instructive. It involved a Colorado law that banned anonymous petition circulation by forcing petition-circulators to identify themselves at the point of contact with voters. 525 U.S. at 186. The Court found that such requirements "force[] circulators to reveal their identities at the same time they deliver their political message," *id*. at 198-99, "when reaction to the circulator's message is immediate and may be the most intense, emotional, and unreasoned[,]" *id*. at 199 (internal citation and quotation omitted). It is also "the precise moment when the circulator's interest in anonymity is greatest." *Id*. The Court found that bans on anonymous petition circulation were constitutionally problematic. Initiative petitions tend to be controversial. They advocate for change in the status quo. Some people are unwilling to circulate petitions when they must reveal their identities at the point of contact with the voters. *Id*. at 198-99. Forcing them to do so "discourage[] participation in the petition circulation process." *Id*. at 200. This "significantly inhibit[s] communication with voters about proposed political change," *id*. at 192, and reduces the pool of those willing to circulate peti-

tions, *id*. at 198, thereby chilling speech, *id*.

The Supreme Court applied strict scrutiny to the ban on anonymous petition circulation, noting that the "now-settled approach" is that "state regulations imposing severe burdens on speech must be narrowly tailored to serve a compelling state interest." *Id*. at 192 n.12 (internal citation and quotation omitted). Colorado law required circulators to publicly identify themselves in official filings at times other than when they were circulating their petitions. *Id*. at 188-89, 192. Because these other filings were a less burdensome alternative to forcibly identifying circulators at the point of contact with the voters, the requirement failed scrutiny and was unconstitutional. *Id*. at 200.

*WIN* is instructive. It involved a law banning anonymous petition-circulation at the point of contact with the voters by requiring that the names of the circulators appear on the petitions. 213 F.3d at 1134. The Ninth Circuit recognized that such bans are "broad intrusion[s], discouraging truthful, accurate speech by those unwilling to disclose their identities and applying regardless of the character or strength of an individual's interest in anonymity." *Id*. at 1138. This "chills speech by inclining individuals toward silence." *Id*. The *WIN* Court then mistakenly evaluated the ban under "exacting scrutiny." *Id*. The *ACLF* Court had earlier applied strict scrutiny to a ban on anonymous petition circulation, 525 U.S. at 192 n.12, and the Ninth Circuit should have followed *ACLF*'s controlling precedent. But

39

even under the less rigorous scrutiny, *WIN* held the ban on anonymous petition circulation unconstitutional. *Id*. at 1140. None of the proffered interests supported it, and other disclosure requirements better served those interests. *Id*. at 1138-40.

The issue before this Court is the same as the issue in *ACLF* and *WIN*— whether government may ban anonymous petition circulation. The Reveal-Your-self Requirement forces proponents to self-identify at the point of contact with voters. Anonymity is important to the Plaintiffs because "they want to make sure that it is their *ideas*, rather than their *identity*, that is evaluated by the voters when they are asked to consider their initiative petitions." ER–69 (VC–¶ 166). The Ninth Circuit recognized that "[a]nonymity may allow speakers to communicate their message when preconceived prejudices concerning the message-bearer, if identified, would alter the reader's receptiveness to the substance of the message." *Heller*, 378 F.3d at 990. Bans on anonymity at the point of contact with voters "interfere[] with [the voters'] evaluation by requiring potentially extraneous infor-mation at the very time the [voter] encounters the substance of the message." *Id*. at 994. This hinders proponents' ability to garner the required signatures because voters may "prejudge [their] message simply because they do not like its propo-nent," *McIntyre*, 514 U.S. at 342, thereby "limiting their ability to make the matter the focus of [city-wide] discussion." *Meyer-II*, 486 U.S. at 423.

That is true in this case. Plaintiff Brietfelder believes he is well-known as anti-

40

union. ER–22. He has staked out well-known political positions. *Id*. Brietfelder does not want his identity to cloud the eyes of voters as they consider initiative petitions he presents, nor refuse to sign his petition simply because he is the proponent. ER–69 (VC–¶ 166). Nor does he want to be subjected to reprisals as a result of publicly identifying at the point of contact with voters. Breitfelder believed this happened during his campaign for City Council as a result of being identified as a proponent of the Fair and Open Competition in Contracting Initiative when it was circulated. ER–22. Forcing proponents to identify themselves at the point of contact with the voters, when they prefer not to, is therefore a burden on speech.

Because of the massive numbers of signatures necessary to qualify an initiative for the ballot, most proponents hire professional circulators just as the Plaintiffs did. ER–61 (VC–¶ 129). But proponents cannot know how each circulator presents his or her message to the electorate. The Reveal-Yourself Requirement may make it appear that proponents endorse the words and actions of the circulators, since the proponents' names are on the petitions as they circulate.

Breitfelder and Kneebone were hesitant, nearly-unwilling proponents because of the Reveal-Yourself Requirement. ER–48-52, 64-65. They objected to having their identities attached so closely to an initiative petition that could be controversial in the City. ER–64 (VC–¶ 142). Their fears were reasonable: recent elections demonstrate how individuals use publicly disclosed information to intimidate indi-

41

viduals exercising First Amendment rights. *See, e.g.*, *Citizens*, 130 S.Ct. at 916 (threats and harassment "cause for concern"); *id*. at 981 (Thomas, J., concurring) ("cottage industry that uses forcibly disclosed donor information to *pre-empt* citizens' exercise of their First Amendment rights."). Kneebone did not want her name revealed at the point of contact with voters and is uncertain whether she will ever do so again. ER–64 (VC–¶ 146). Breitfelder is adamant that he will never be a proponent again if he must reveal his identity at the point of contact with voters. ER–64 (VC–¶ 147). Just as in *ACLF* and *WIN*, the Reveal-Yourself Requirement both burdens and chills petition-circulation speech and so must be subjected to constitutional scrutiny.

### 3. The Requirement Is Subject to, and Fails, Strict Scrutiny.

After the *WIN* decision, the Ninth Circuit ruled that ballot-measure laws imposing severe burdens on speech are subject to *strict* scrutiny, while those imposing lesser burdens are subject to exacting scrutiny. *Prete*, 438 F.3d at 961. The law challenged in *Prete* is an example of a "lesser burden." It did not dictate speech nor force one to give up anonymity, but rather banned per-signature payments for petition-circulators. *Id*. at 951. But petition-circulators could be paid in other ways, *id*. at 952 n.1, and salaries could be adjusted on the basis of productivity so the most successful signature-gatherers could continue to earn the most money, *id*.; *see also id*. at 968. The plaintiffs argued the law would reduce the pool of

available circulators, but they were unable to identify a single petition circulator who would not work because of the ban on per-signature payments. *Id*. at 964. Instead, they offered "unsupported speculation." *Id*. The plaintiffs thus failed to establish that their speech was burdened. *Id*. They had only established a "lesser burden" on the initiative process itself, so the regulation was subject to exacting scrutiny. *Id*.

In contrast, the Reveal-Yourself Requirement burdens speech. It dictates what speakers must say by requiring proponents to identify themselves on their initiative petitions as they are circulated. Requiring proponents' signatures on the petition may also make it appear to the voters that the proponents agree with the words and actions of the petition-circulators. And speech is actually chilled. Larry Breitfelder will never again offer an initiative petition so long as the Reveal-Yourself Requirement is enforced, and Lori Kneebone is uncertain whether she will be willing to do so. ER–64 (VC–¶¶ 146-47).

The Reveal-Yourself Requirement imposes a severe burden on petition-circulation speech, which is "core political speech." *Pest Committee v. Miller*, 626 F.3d 1097, 1106 (9th Cir. 2010) (quoting *Meyer-II*, 486 U.S. at 421). *Prete*'s standard thus requires the Court to review the Requirement under strict scrutiny. *Pest Committee*'s holding, that strict scrutiny applies where regulations reduce the "quantum of speech" or "the available pool of circulators or other supporters of a[n] . . .

initiative[,]" 626 F.3d at 1106, likewise requires this Court to apply strict scrutiny. *See also Citizens*, 130 S.Ct. at 898 ("Laws that burden political speech are subject to strict scrutiny"); *Heller*, 378 F.3d at 987 ("proscribing the content of an election communication is . . . subject to traditional strict scrutiny.").[16]

Strict scrutiny requires government to prove a compelling interest and narrow tailoring. *See, e.g.*, *WRTL-II*, 551 U.S. at 464. No compelling interest supports the Reveal-Yourself Requirement. *Buckley* found three compelling interests in disclosure, 424 U.S. at 66-68, none of which are sufficient to support the Reveal-Yourself Requirement.

First, *Buckley* identified an interest in informing voters about the sources of political campaign money and how candidates spend it. *Id*. at 66. Such knowledge would "alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office." *Id*. But

---

[16] *WIN* applied exacting scrutiny to a ban on anonymous petition circulation. 213 F.3d at 1138. *WIN* should not be followed on that scrutiny for three reasons. (1) *WIN* overlooked *ACLF*'s binding precedent that bans on anonymous petition circulation require strict scrutiny. *ACLF*, 525 U.S. at 192 n.12. (2) *Prete* clarified that ballot-measure regulations imposing severe speech burdens require strict scrutiny, while lesser burdens exacting scrutiny, *Prete*, 438 F.3d at 961, so under *Prete*'s standard, exacting scrutiny would be inappropriate on *WIN*'s facts. (3) The Supreme Court declared exacting scrutiny proper only for disclosure laws that do not prevent anyone from speaking. *Citizens*, 130 S.Ct. at 914. But "[l]aws that burden political speech are subject to strict scrutiny." *Id*. at 898. *WIN* recognized that anonymous petition-circulation bans prevent speech, 213 F.3d at 1138, so strict scrutiny was required.

this interest cannot support disclosure of the identity of proponents of ballot measures. Unlike elected candidates, adopted ballot measures cannot "be responsive" to anyone. Voters do not need to know the identity of proponents to predict "the future performance" of ballot measures. Everything necessary to evaluate them is contained in the text of the measure itself and the "true and impartial" title and summary of its purpose and effect that the City Attorney must prepare and include on the petition. Code §§ 9203, 9207. Because compelled identification of proponents at the point of contact with voters cannot further *Buckley*'s informational interest, that interest is insufficient to support the Reveal-Yourself Requirement.[17]

Second, *Buckley* identified an anti-corruption interest in disclosure, recognizing that "disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity." 424 U.S. at 67. But this interest cannot support compelled identification of proponents at the point of contact with the voters because there is no risk of corruption in ballot measures. *CARC*, 454 U.S. at 298. *See also Sampson v. Buescher*, 625 F.3d 1247, 1256 (10th Cir. 2010) (ruling that *Buckley*'s anti-corruption inter-

---

[17] Any informational interest in ballot measure disclosure is limited to financial sponsors. "[T]he information to be disclosed is the identity of persons *financially* supporting or opposing a candidate or ballot proposition." *Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021, 1032 (9th Cir. 2009). Neither individual plaintiff, listed as proponents, made any financial contribution to the Initiative. ER–48, 51 (VC–¶¶ 47, 62).

est is irrelevant to ballot measures because "quid pro quo corruption cannot arise in a ballot-issue campaign.").[18]

Third, *Buckley* identified an enforcement interest in disclosure, noting that "recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of . . . contribution limitations[.]" *Buckley*, 424 U.S. at 67-68. But this interest does not support compelled identification of proponents at the point of contact with the voters.

Even if an informational interest supports the Reveal-Yourself Requirement, it is not narrowly tailored. Rather, as set out below, it is overinclusive, *see Citizens*, 130 S.Ct. at 911; *Simon & Schuster v. New York State Crime Victims Bd.*, 502 U.S. 105, 121-23 (1991), and underinclusive, *see Citizens*, 130 S.Ct. at 911; *White*, 536 U.S. at 769-81 (same), and fails the least-restrictive-means requirement, *see Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *MCFL*, 479 U.S. at 262; *White*, 536 U.S. at 774-75.

This Requirement is overinclusive. The Ninth Circuit explained that "in the ballot issue context, the relevant informational goal is to inform voters as to 'who

---

[18] The anti-corruption interest supports disclosing petition *signers* because verifying signatures is necessary to verify that the petition qualified for the ballot. *Doe v. Reed*, 130 S.Ct. at 2821. But that ruling has no application to compelled disclosure of proponents' identities. *WIN*, 213 F.3d at 1139 (holding that "[d]isclosure of a circulator's name and address will not establish whether signatures on a petition he submits are forged.").

backs or opposes a given initiative' financially . . . ." *Unsworth*, 556 F.3d at 1033 (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1106 (9th Cir.2003) ("*CPLC-I*")). Yet neither plaintiff-proponent made any financial contribution to their initiative effort. ER–48, 51 (VC–¶¶ 47, 62). Thus, even if there were an interest in identifying financial supporters of ballot measures at the point of contact with the voters, this Requirement compels the identification of those who made *no* financial contribution.

This Requirement is also underinclusive. If the City's goal is to inform voters of who financially backs ballot measures, this Requirement is inadequate because it only requires financial supporters to identify themselves if they are proponents. The case at bar illustrates the problem. Plaintiff ABC was the principle financial sponsor of its initiative and Plaintiff Chula Vista Citizens paid for the newspaper publication required by Code § 9205. ER–4, 45-46, 53 (VC–¶¶ 19, 27, 38, 76). Yet because neither were proponents of the initiative, this Requirement did not compel their identification. This underinclusiveness leaves the voters uninformed as to the true financial backers of ballot measures. Also, this Requirement does not compel those who financially oppose initiative petitions to identify themselves. If the goal is an informed electorate, identifying financial opponents of initiative petitions is as important as identifying financial supporters. *CPLC-I*, 328 F.3d at 1106; *Unsworth*, 556 F.3d at 1032. Yet there is no requirement that opponents of initia-

47

tive petitions identify themselves, even when they circulate literature urging the electorate to refuse to sign petitions. Only proponents are forced to identify themselves. This Requirement's underinclusiveness "diminish[es] the credibility of the government's rationale for restricting speech," *City of Ladue v. Gilleo*, 512 U.S. 43, 52-53 (1994), and "render[s] belief in that purpose a challenge to the credulous[,]" *White*, 536 U.S. at 780.

Even if the City has an interest in informing electors of initiative proponents, this Requirement is not the least restrictive means. On-publication identification is "considerably more intrusive" than other reporting. *Heller*, 378 F.3d at 992; *see also McIntyre*, 514 U.S. at 356. The City requires proponents to identify themselves on filings made with the City Clerk, Code § 9202, and in the local newspaper, Code § 9205, prior to circulating petitions, Code § 9207. Those filings are available to the electorate and satisfy whatever interest the City might have in compelling proponents to reveal themselves. Requiring identification at the point of contact with voters is unnecessary and so not narrowly tailored. *ACLF*, 525 U.S. at 192 (holding Colorado's requirement that petition-circulators identify themselves at the point of contact with the voters unconstitutional where Colorado required identification at other, less intrusive times).

### 4. If Exacting Scrutiny Were Proper, the Requirement Fails.

Even if exacting scrutiny were proper, this Requirement fails because there is

no "substantial relation" to a "sufficiently important interest." *Human Life of Wash.*, 624 F.3d at 1003. The City has no constitutionally cognizable interest in the Requirement as set out above. Even if the City has a constitutionally cognizable interest, the Requirement is inadequately tailored as set out above.

Under exacting scrutiny, the Ninth Circuit held that compelled identification of petition-circulators at the point of contact with the voters was unconstitutional. *WIN*, 213 F.3d 1132. "The State's interest in combating fraud weighs minimally in the balance[,]" because "ballot initiatives do not involve the risk of 'quid pro quo' corruption present when money is paid to, or for, candidates." *Id*. at 1139. And "[e]ven if [the] interest in fraud detection were substantial, the required disclosure of names and addresses of paid circulators does not further that interest." *WIN*, 213 F.3d at 1139. The court also found the informational interest inadequate, explaining that "there is no logical explanation of how a voter who signs an initiative petition would be educated in any meaningful way by learning the circulator's name or address." *Id*. The informational interest was adequately served by "a panoply of the State's other requirements that ha[d] not been challenged." *Id*. The proffered interests were thus insufficient, so the requirement that circulators identify themselves to voters could not pass scrutiny. *Id*. at 1140.

In the same way, the constitutionally cognizable interests in disclosure recognized by *Buckley* and its progeny do not support the Reveal-Yourself Require-

49

ment. The anti-corruption interest is inapplicable to ballot measures, and even if that were not so, it is not furthered by the compelled identification of proponents. *WIN*, 213 F.3d at 1139. *See supra* at 45-46. The enforcement interest is also inapplicable. *See supra* at 46. And no substantial relation exists between this Requirement and the informational interest because the identity of those offering petitions tells little about ballot measures. *WIN*, 213 F.3d at 1139. Besides, any informational interest is served by "a panoply of . . . other requirements." *Id*. Prior to circulating a petition, proponents must identify themselves on filings with the City Clerk, Code § 9202, and in the newspaper, Code § 9205, which adequately serves any informational interest. This renders the informational interest supporting the Reveal-Yourself Requirement negligible, if it exists at all. But the burden on speech is severe. Proponents must reveal themselves at the point of contact with voters and also may wrongly appear to agree with petition-circulators' words and actions. This Requirement also chills speech by discouraging would-be proponents. Breitfelder will never again offer an initiative petition so long as the Requirement is enforced, and Kneebone is uncertain whether she will do so. ER–64 (VC–¶¶ 146-47).[19]

---

[19] The Supreme Court and the Ninth Circuit have consistently struck laws creating hesitancy and unwillingness in speakers. *See, e.g.*, *Meyer-II*, 486 U.S. at 423; *ACLF*, 525 U.S. 198-200; *WIN*, 213 F.3d at 1138. "[I]t is precisely the risk that people will refrain from advocating controversial positions that makes a disclosure scheme of this kind especially pernicious." *WIN*, 213 F.3d at 1138. The City's law

How does the district court below respond to these arguments? It decides that cases recognizing a right of anonymity in the initiative process, such as *McIntyre* and *Heller*, did not "recognize[] a First Amendment right to anonymously *propose* a ballot measure." ER–16 (emphasis in original). But that response fails the precision of analysis to which burdens on First Amendment must be subjected. Plaintiffs do not challenge proponent disclosure at the first two levels of disclosure—the Clerk's Version and Newspaper Version, *see supra* footnote 15—only the Circulated Version of disclosure, *id.*, which is closely analogous to the situation in *ACLF*, where petition-circulators were protected by the First Amendment from having to identify themselves at the point of contact with voters. 525 U.S. at 186. (And in any event, *electors* "propose" initiatives by signing petitions in sufficient numbers. *See supra* at 9-10.) Thus, Plaintiffs did not seek to anonymously "propose" a ballot measure. Any informational interest the government may have is met by the less-restrictive means[20] of the other two disclosures already made.

The district court decides that proponents are not circulators (though propo-

---

likewise risks chilling the speech of those willing to "advocat[e] controversial positions," *id.*, by being proponents of ballot initiatives, which naturally involve challenges to the status quo. This Requirement discourages participation in the initiative process, thereby "reducing the total quantum of [initiative-related] speech" available to the public. *Meyer-II*, 486 U.S at 423.

[20] Even under exacting scrutiny there is the tailoring requirement that a restriction that is closely drawn must nonetheless "avoid unnecessary abridgement of associational freedoms." *Buckley*, 424 U.S. at 25.

nents may act as circulators if they choose) and so are not subject to the same heat-of-the-moment risk as circulators. ER–17. But that difference is at most a matter of degree, so it does not make the cases recognizing protection for anonymous petition circulation inapplicable. The concept is clearly transferable to this similar situation. And any reduced risk to proponents is offset by the reduced information interest (assuming arguendo there is one) because two disclosures have already been made (Clerk's Version and Newspaper Version).

The district court decides that the Reveal-Yourself Requirement is supported by an interest in protecting the integrity of the electoral process. ER–20. It notes Plaintiffs' argument that "questions as to whether the name of the proponent is fraudulent or authentic[] could be answered by the first two required proponent name disclosures," ER–20, but decides that, since being a proponent is limited to electors, having the proponents' names on the circulated petitions may allow local electors to "recognize whether the proponent qualifies as an elector." ER–20. Of course, whether being a proponent may constitutionally *be* restricted to individual electors is at issue herein. But even if the individual-elector requirement were constitutional, requiring this disclosure based on the possibility that someone might note the name on the petition and announce that the proponent is not really an elector is a thin reed on which to rest First Amendment burdens in light of two prior disclosures and ample opportunity for initiative opponents to discover the

52

same fact. Lost in the shuffle is the requirement that where First Amendment rights are involved, the government "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 664 (1994) (internal quotation marks and citation omitted); *see also Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 803 n. 22 (1984) ("[This Court] may not simply assume that the ordinance will always advance the asserted state interests sufficiently to justify its abridgement of expressive activity.").

The district court decides that plaintiffs Kneebone and Breitfelder offer little evidence of the reasonable threat of reprisals for which *Buckley* authorized a complete exclusion from disclosure. ER–21; *Buckley*, 424 U.S. at 74. But these individual plaintiffs have not argued for the "blanket exemption" with which *Buckley* dealt, *id.* at 72, but rather sought only anonymity at the level of petition circulation. Thus, *Buckley*'s test is not the proper test. Rather, *McIntyre*'s analysis controls, i.e., one may seek anonymity for several reasons: "The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible." 514 U.S. at 341-42. "On occasion, quite apart from any threat of persecution, an advocate may believe her ideas will be more persuasive if her

readers are unaware of her identity." *Id.* at 342. So the individual plaintiffs legitimately asserted these reasons for desiring anonymity at the point of petition circulation, apart from any blanket-exemption analysis.

The district court decides that there is also "only a slight burden on Kneebone's and Breitfelder's right to speak anonymously" because both participated in public debate over the Initiative. ER–21. But the court is mistaken in this analysis. Mrs. McIntyre herself put her name on some of her handbills, but not others, 514 U.S. at 337 ("Some of the handbills identified her as the author . . . ."), but that did not deprive her of her right to advocate a ballot measure anonymously. Moreover, the fact that persons disclose in one context does not mean they waive their privacy rights in other contexts. *See Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1188 (8th Cir. 2000) ("Even information that is available to the general public in one form may pose a substantial threat to privacy if disclosed to the general public in an alternative form potentially subject to abuse."); *see also id.* (Referendum signers' "substantial privacy interest in [their] petition is not diminished by the fact that many individuals may have signed it in their business or entrepreneurial capacities."); *see also U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 770 (1989) ("[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.").

54

Finally, the district court says that Kneebone and Breitfelder didn't really want to engage in anonymous speech because they wanted Chula Vista Citizens and ABC to be named as the true proponents (because ABC provided major funding for the campaign and Chula Vista actually "published" the Initiative by paying for publication, a duty of proponents). ER–23-25. But these positions are not mutually exclusive and are nothing new because they were stated in the *Verified Complaint.* Plaintiffs argued *both* that, "[a]s recognized by the *McIntyre* Court, 'an advocate may believer her ideas will be more persuasive' when anonymity is preserved,'" ER–69 (VC–¶ 167) (citation omitted), *and* that "[n]either Ms. Kneebone nor Mr. Breitfeld are the true proponents of the initiative petition," "[y]et, the Clerk requires that individual members of Chula Vista Citizens serve as the proponents, and refuses to allow Chula Vista Citizens to do so,"ER–71-72 (VC–¶ 172), and both individual plaintiffs sought to have their names expunged and Chula Vista Citizens and ABC substituted as proponents. ER–48-53 (VC–¶¶ 44-74). So the fact that Kneebone and Breitfelder wanted Chula Vista Citizens listed as the proponent does not mean that they did not want their own names listed.

## B. The Reveal Yourself Requirement Is an Impermissible Content-Based Regulation of Political Speech.

In the ballot-measure context, "[t]he identity of the speaker is no different from other components of the document's content that the author is free to include

or exclude." *McIntyre*, 514 U.S. at 348. A prohibition on anonymous ballot measure speech is thus "a direct regulation of the content of speech," *id*. at 345, because it forces speakers to conform their message to the government's desired content. *See also Heller*, 378 F.3d at 987 (ruling that bans on anonymity in the ballot measure context "affect *the content of the communication itself*" and force the speaker to conform to the government's "prescribed criteria"); *Prete*, 438 F.3d at 968 n.24 (laws regulating what can or cannot be said in the ballot measure context are content-based restrictions).

The Reveal-Yourself Requirement, which forces proponents to include their identity in their message about proposed ballot measures, is thus a content-based regulation of political speech, just like the identity requirements found unconstitutional in *McIntyre* and *Heller*. *See ACLF*, 525 U.S. at 199 ("Circulating a petition is akin to distributing a handbill."). It is a "serious, content-based, direct proscription of political speech" because the City dictates the content of the proponent's political message. *Heller*, 378 F.3d at 993."If certain content appears on the communication, it may be circulated; if the content is absent, the communication . . . may not be circulated." *Id*. at 992. On-publication identity requirements are "considerably more intrusive" than after-the-fact reporting. *Id*. at 992; *see also McIntyre*, 514 U.S. 356 (calling a ban on anonymous political speech "more intrusive" than *Buckley*'s after-the-fact disclosure requirements). Laws such as the

56

City's are "regulation[s] of pure speech," *McIntyre*, 514 U.S. at 345, that must be closely scrutinized.

The harm produced by the City's ban on anonymity goes beyond even that in *Heller* and *McIntyre*. The City Clerk will not accept signatures on initiative petitions that were circulated anonymously. ER–42 (VC–¶ 12). Thus, the City's policy not only directly intrudes on Plaintiffs' First Amendment right to anonymous speech, but it excludes those wishing to exercise their rights from proposing citizen-initiated legislation. "[S]tatutes that limit the power of the people to initiate legislation are to be closely scrutinized[.]" *Meyer*, 486 U.S. at 423 (quotations and citations omitted).

The Reveal-Yourself Requirement dictates the content of proponents' speech and so is a content-based regulation subject to strict scrutiny, *Heller*, 378 F.3d at 987; *Prete*, 438 F.3d at 968 n.24, which it fails. It is therefore unconstitutional.

## Conclusion

For the foregoing reasons the district court's order granting summary judgment to Appellees should be reversed and the case remanded with an order to enter summary judgment for Appellants.

## Statement of Related Cases

Plaintiffs know of no related cases.

Respectfully submitted,

 s/ Richard E. Coleson

Charles H. Bell, Jr.,
  cbell@bmhlaw.com
Brian T. Hildreth
  bhildreth@bmhlaw.com
BELL, MCANDREWS & HILTACHK, LLP
455 Capitol Mall, Suite 600
Sacramento, CA 95814
916/442-7757; 916/442-7759 (fax)

Gary D. Leasure
  gleasure@workmanleasure.com
WORKMAN LEASURE, LLP
12626 High Bluff Drive # 150
San Diego, CA 92130
858/720-1992; 858/720-1990 (fax)
*Counsel for Plaintiffs-Appellants*

James Bopp, Jr.
  jboppjr@aol.com
*Lead Counsel for Plaintiffs-Appellants*
Richard E. Coleson
  rcoleson@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434; 812/235-2685 (fax)
*Counsel for Plaintiffs-Appellants*

# Addendum

# Addendum Table of Contents

**U.S. Constitution**

    Amendment I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–1

    Amendment XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–1

**California Constitution**

    Article II, Section 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–1

**California Elections Code**

    Section 321. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2

    Section 342 (before and after Jan. 1, 2010). . . . . . . . . . . . . . . . . . . A–2

    Section 9202(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–2

    Section 9205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–3

    Section 9207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–3

    Section 9282. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–3

    Section 9287. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–4

**City of Chula Vista Charter**

    Section 903. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A–4

**U.S. Constitution**

**Amendment I:**

Congress shall make no law . . . abridging the freedom of speech, or of the press, or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances.

**Amendment XIV:**

Section 1. . . . [N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .

**California Constitution**

**Article II, Section 8:**

(a) The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them.

(b) An initiative measure may be proposed by presenting to the Secretary of State a petition that sets forth the text of the proposed statute or amendment to the Constitution and is certified to have been signed by electors equal in number to 5 percent in the case of a statute, and 8 percent in the case of an amendment to the Constitution, of the votes for all candidates for Governor at the last gubernatorial election.

(c) The Secretary of State shall then submit the measure at the next general election held at least 131 days after it qualifies or at any special statewide election held prior to that general election. The Governor may call a special statewide election for the measure.

(d) An initiative measure embracing more than one subject may not be submitted to the electors or have any effect.

(e) An initiative measure may not include or exclude any political subdivision of the State from the application or effect of its provisions based upon approval or disapproval of the initiative measure, or based upon the casting of a specified percentage of votes in favor of the measure, by the electors of that political subdivision.

(f) An initiative measure may not contain alternative or cumulative provisions wherein one or more of those provisions would become law depending upon the casting of a specified percentage of votes for or against the measure.

**Article XI, Section 5(b):**

(b) It shall be competent in all city charters to provide, in addition to

A-1

those provisions allowable by this Constitution, and by the laws of the State for: . . . (3) conduct of city elections . . . .

**California Elections Code ("Code")**

**Section 321:**

"Elector" means any person who is a United States Citizen 18 years of age or older and resident of an election precinct at least 15 days prior to an election.

**Section 342 (*before* January 1, 2010):**

"Proponent or proponents of an initiative or referendum measure" means, for statewide initiative and referendum measures, the person or persons who submit a draft of a petition proposing the measure to the Attorney General with a request that he or she prepare a title and summary of the chief purpose and points of the proposed measure; or for other initiative and referendum measures, the person or persons who publish a notice or intention to circulate petitions, or, where publication is not required, who file petitions with the elections official or legislative body.

**Section 342 (*after* January 1, 2010):**

"Proponent or proponents of an initiative or referendum measure" means, for statewide initiative and referendum measures, the elector or electors who submit the text of a proposed initiative or referendum to the Attorney General with a request that he or she prepare a circulating title and summary of the chief purpose and points of the proposed measure; or for other initiative and referendum measures, the person or persons who publish a notice or intention to circulate petitions, or, where publication is not required, who file petitions with the elections official or legislative body.

**Section 9202(a):**

(a) Before circulating an initiative petition in any city, the proponents of the matter shall file with the elections official a notice of intention to do so, which shall be accompanied by the written text of the initiative and may be accompanied by a written statement not in excess of 500 words, setting forth the reasons for the proposed petition. The notice shall be signed by at least one, but not more than three, proponents and shall be in substantially the following form:

Notice of Intent to Circulate Petition

Notice is hereby given by the persons whose names appear hereon of their intention to circulate the petition within the City of _____ for the purpose of

A-2

_____. A statement of the reasons of the proposed action as contemplated in the petition is as follows:

**Section 9205:**

A notice of intention and the title and summary of the proposed measure shall be published or posted or both as follows:

(a) If there is a newspaper of general circulation, as described in Chapter 1 (commencing with Section 6000) of Division 7 of Title 1 of the Government Code, adjudicated as such, the notice, title, and summary shall be published therein at least once.

(b) If the petition is to be circulated in a city in which there is no adjudicated newspaper of general circulation, the notice, title, and summary shall be published at least once, in a newspaper circulated within the city and adjudicated as being of general circulation within the county in which the city is located and the notice, title, and summary shall be posted in three (3) public places within the city, which public places shall be those utilized for the purpose of posting ordinances as required in Section 36933 of the Government Code.

(c) If the petition is to be circulated in a city in which there is no adjudicated newspaper of general circulation, and there is no newspaper of general circulation adjudicated as such within the county, circulated within the city, then the notice, title, and summary shall be posted in the manner described in subdivision (b).

**Section 9207:**

The proponents may commence to circulate the petitions among the voters of the city of signatures by any registered voter of the city after publication or posting, or both, as required by Section 9205, of the title and summary prepared by the city attorney. Each section of the petition shall bear a copy of the notice of intention and the title and summary prepared by the city attorney.

**Section 9282:**

(a) For measures placed on the ballot by petition, the persons filing an initiative petition pursuant to this article may file a written argument in favor of the ordinance, and the legislative body may submit an argument against the ordinance.

(b) For measures placed on the ballot by the legislative body, the legislative body, or any member or members of the legislative body authorized by that body, or any individual voter who is eligible to vote on the measure, or bona fide association of citizens, or any combination of voters and associations, may file a written argument for or against any city measure.

A-3

(c) No argument shall exceed 300 words in length.

(d) The city elections official shall include the following statement on the front cover, or if none, on the heading of the first page, of the printed arguments:

"Arguments in support or opposition of the proposed laws are the opinions of the authors."

(e) The city elections official shall enclose a printed copy of both arguments with each sample ballot; provided, that only those arguments filed pursuant to this section shall be printed and enclosed with the sample ballot. The printed arguments are "official matter" within the meaning of Section 13303.

(f) Printed arguments submitted to voters in accordance with this section shall be titled either "Argument In Favor Of Measure ____" or "Argument Against Measure ____," accordingly, the blank spaces being filled in only with the letter or number, if any, designating the measure. At the discretion of the elections official, the word "Proposition" may be substituted for the word "Measure" in these titles.

**Section 9287:**

If more than one argument for or more than one argument against any city measure is submitted to the city elections official within the time prescribed, he or she shall select one of the arguments in favor and one of the arguments against the measure for printing and distribution to the voters. In selecting the argument the city elections official shall give preference and priority, in the order named, to the arguments of the following:

(a) The legislative body, or member or members of the legislative body authorized by that body.

(b) The individual voter, or bona fide association of citizens, or combination of voters and associations, who are the bona fide sponsors or proponents of the measure.

(c) Bona fide associations of citizens.

(d) Individual voters who are eligible to vote on the measure.

**City of Chula Vista Charter ("Charter")**

**Section 903:**

There are hereby reserved to the electors of the City the powers of the initiative and referendum . . . . The provisions of the Election Code of the State of California, as the same now exists or may hereafter be amended governing the initiative and referendum . . . shall apply to the use thereof in the City so far as such provisions of the Elections Code are not in conflict with this Charter.

A-4

**Form 6.**   **Certificate of Compliance With Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   ☒ this brief contains <u>13,870</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* <u>WordPerfect X4</u>
   *(state font size and name of type style)* <u>14 point Times New Roman</u>, *or*

   ☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____
   with *(state number of characters per inch and name of type style)*
   _____.

Signature | s/ Richard E. Coleson

Attorney for | Plaintiffs-Appellants

Date | Aug 29, 2012

# Certificate of Service

I certify that on August 29, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM-ECF system. I certify that all participants in the case are registered CM-ECF users and that service will be accomplished by the appellate CM/ECF system, which will notify:

Charles A. Bird, MCKENNA LONG & ALDRIDGE LLP, Suite 2600, 600 W. Broadway, San Diego, CA 92101-3391

Bart Chase Miesfeld, OFFICE OF THE CITY ATTORNEY, City of Chula Vista, 276 Fourth Ave., Chula Vista, CA 92010-2699

Edward Patrick Swan, Jr., JONES DAY,Suite 200, 12265 El Camino Real, San Diego, CA 92130

George Michael Waters, Office of the California Attorney General, P.O. Box 944255, Sacramento, CA 94244-2550.

I further certify that on August 29, 2012, I caused the required number of bound copies of the Excerpts of Records to be filed, via UPS Next Day Air, with the Clerk of this Court, and one copy of the same to be served, via UPS Next Day Air (but by U.S. First Class Mail to Mr. Waters's postal box), to all case participants, at the above listed addresses.

s/ Richard E. Coleson

August 29, 2012